IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

MAR 3 1 2025

LAURA A. AUSTIN, CLERK
BY: M. POFF
DEPUTY CLERK

| | |
|---|---|
| KAREEM YOUNG,<br>    Petitioner | )<br>) Case No. 7:24-cv-189<br>) |
| v. | )<br>) |
| UNITED STATES,<br>    Respondent | )<br>) By: Michael F. Urbanski<br>) Senior United States District Judge |

## MEMORANDUM OPINION

Petitioner Kareem Young, proceeding pro se, has filed a petition and a supplemental petition for relief pursuant to 28 U.S.C. § 2241, alleging that he was deprived of good time credits without due process following a prison disciplinary hearing. ECF Nos. 1, 3. Respondent filed a motion to dismiss, or alternatively, for summary judgment, ECF No. 9, and Young has responded. ECF Nos. 18, 20. Respondent replied to Young's response. ECF No. 19. Also pending is a motion by Young for expungement of his disciplinary record, ECF No. 21, which is identical to his two responses to respondent's motion to dismiss or for summary judgment. For the reasons stated below, the court **GRANTS in part and DENIES in part without prejudice** the motion to dismiss or for summary judgment, ECF No. 9, and directs the Clerk of Court to **TERMINATE** Young's motion for expungement of his disciplinary record, ECF No. 21, as the issues raised in the motion are addressed in this memorandum opinion and order.

### I. BACKGROUND

Young currently is incarcerated at United States Penitentiary (USP), Hazelton in Bruceton Mills, West Virginia. At the time he filed his motion for relief, he was incarcerated

at USP Lee in Jonesville, Virginia. Young complains about procedures in a disciplinary hearing at USP Lee that resulted in the loss of good conduct time.

In Incident Report No. 3763393, Young was accused of "assaulting w/o serious injury (attempting)." The incident report, submitted by M. Sloan, sets forth the following:

> On April 24th, 2023, at approximately 1:50 p.m. inmate Young, Kareem … reported to the Lieutenant's Office to speak to Psychology staff. While Inmate Young was speaking with other Psychology staff, he became verbally aggressive, at that point it was deemed necessary to conduct a body scan and visual search of inmate Young, due to staff safety. At that time, I applied hand restraints to inmate Young. Due to shift change I assisted in escorting Inmate Young to R&D to be body scanned and visually searched for any other weapons and or contraband. At approximately 2:04 p.m., during the visual search attempt Inmate Young displayed signs of imminent violence, by attempting to strike my facial area with his elbow. With the least amount of force necessary I placed inmate Young onto the ground to gain control of the disruptive Inmate. Staff needs assistance in R&D was called via portable radio. I and responding staff gained control of Inmate Young by placing him back into hand restraints. Immediately after control of the inmate was gained, I separated myself from the incident. I have reported injuries that have been documented by medical. End of report.

Incident Report, ECF No. 10-2 at 1.

The incident report was reviewed by the Unit Disciplinary Committee (UDC) and according to the incident report, Young was given an opportunity to comment but declined to do so. The incident was then referred to the disciplinary hearing officer (DHO) for a hearing. Id. at 2-3; Notice of Disp. Hrg., ECF No. 10-4 at 1. A hearing was held on May 3, 2023. According to a report prepared by the DHO, Young acknowledged receipt of a copy of the incident report and that he understood his rights before the DHO. Young did not request staff representation and did not call any witnesses. Disp. Hrg. Officer Rep't, ECF No. 10-5 at

2

1. The DHO read the description of the incident report to Young and asked Young if he admitted or denied attempting to strike the reporting officer in the facial area with his elbow. Young responded, "I didn't do that." According to the DHO, Young did not present any documentary evidence for the DHO to consider and did not request video evidence during any stage of the disciplinary process. Id.

The DHO found, based on the greater weight of the evidence, that Young committed the prohibited act of Assaulting Any Person (Attempted) in violation of Code 224A of the inmate disciplinary policy. Id. at 3. The DHO relied upon Officer Sloan's report, a supporting memorandum filed by another officer who was assisting Sloan and corroborated Sloan's description of events, and a Health Services Staff Injury Assessment and photographs which stated the reporting staff member sustained injuries as a result of the incident. Id. at 2–3. Young was punished with the loss of 27 days of good conduct time, 30 days of disciplinary segregation, and 180 days each of commissary privileges and phone privileges. Id. at 4. The DHO issued the report on July 3, 2023, id. at 4, and Young was given a copy of the report on August 17, 2023. Decl. of Jeffery Brown, ECF No. 10-1 ¶ 8. Respondent concedes that Young appealed the disciplinary action and exhausted his administrative remedies. Resp., ECF No. 10 at 5.

In his complaint, Young asserts that his due process rights were violated when he was denied the right to call witnesses and present documentary evidence at the hearing, and that the DHO threatened him during the hearing and denied Young's request for the video evidence of the incident. Mot., ECF No. 1 at 1. Young asks the court to obtain the video of the incident and watch it to confirm that Young did not attempt to assault a staff member. He

3

also asks that the court direct that the record of the disciplinary hearing be expunged. Finally, Young asks to be transferred to another unit for his safety because he fears retaliation and harassment by staff at USP Lee. Id. at 2.[1] Young also alleges that the BOP violated Program Statement 6340.04(d) because he is a mental health patient and BOP staff should have referred him for a psychiatric evaluation for correctional purposes. ECF No. 3 at 2. Young asks (1) to have the video footage of the incident reviewed and made part of the record; (2) to be transferred away from USP Lee; (3) that the incident report be expunged from his record; and (4) that his 27 days of good conduct time be restored.

In the motion to dismiss or alternatively for summary judgment, respondent argues that Young did not request witnesses or ask that the video be produced, and that he otherwise was afforded due process.

## II. STANDARD OF REVIEW

Respondent moves to dismiss Young's petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and, alternatively, for summary judgment under Fed. R. Civ. P. 56.

### A. Motion to Dismiss

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint, "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v.

---

[1] Young also asserts that he was called to the lieutenant's office to talk to the psychology staff and that while he was there, psychology officers became verbally aggressive with him by making racist remarks and sexually harassing him. He further alleges that he later was strip searched, tortured, sexually assaulted, put in restraints, and deprived of medical attention and food and water. To the extent Young is complaining about his conditions of confinement, including excessive use of force, he must do so via a separate civil action asserting a cause of action under 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), or the Federal Tort Claims Act, as appropriate. Young's request to be transferred away from USP Lee is **DENIED as moot** and he has been transferred to USP Hazelton.

4

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166-67 (4th Cir. 2017).

Generally, the court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). However, the court may "consider documents attached to the complaint" in addition to documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

Additionally, Fed. R. Civ. P. 12(d) provides the following:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In this case, respondent filed documentary evidence, including a declaration under penalty of perjury by the DHO, the record of the incident report, a form outlining inmate rights at a disciplinary hearing, the notice of the disciplinary hearing, and the report written by the DHO after the hearing. ECF Nos. 10-1, 10-2, 10-3, 10-4, and 10-5. Accordingly, in accordance with Rule 12(d), the court will treat the motion as one for summary judgment.

**B. Motion for Summary Judgment**

Under Rule 56, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)).

6

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249), and "'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). "[T]o grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

## III. DISCUSSION

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause. Id. at 483-84 (citing Wolff v. McDonnell, 418 U.S. 539 (1974) and Meachum v. Fano, 427 U.S. 215 (1976)). However, the interests generally are

7

limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Young lost 27 days of good conduct time and it is well-established that inmates have a liberty interest in the forfeiture of vested good conduct time. Batra v. Smith, No. 3:13CV787, 2016 WL 4249494, *2 (E.D. Va. 2016) (citing Henson v. United States Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000)); Downs v. Gill, No. DKC-10-964, 2011 WL 1457757, *3 (D. Md. 2011) (citing Henson, 213 F.3d at 898). Thus, good conduct time can only be taken from a prisoner in a manner that comports with due process.

The Supreme Court described the process due a prisoner accused of a disciplinary infraction in Wolff, 418 U.S. at 564: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

In this case, Young asserts that he was not allowed to request witnesses for the hearing and that his request for the video to be played was denied. Regarding the request to call witnesses, Young does not name or describe the witnesses he requested or describe what they would have said. Mot., ECF No. 1; Resp., ECF No. 18. Without a description of the proposed witnesses or their testimony, Young cannot show that he was denied due process because the court cannot determine whether the excluded witnesses could have aided in Young's defense. See Lennear v. Wilson, 937 F.3d 257, 277 (4th Cir. 2019) (holding that "in evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine

8

whether the excluded evidence could have aided the inmate's defense."); Allen v. Mitchell, No. 5:16-CT-3113-FL, 2020 WL 1443456, at *5 (E.D.N.C. Mar. 19, 2020) (finding plaintiff failed to state a due process claim based on failure to call witnesses at disciplinary hearing when he did not explain who he would have called as a witness or how the testimony would have aided his defense). Accordingly, Young has failed to show that a genuine issue of material fact exists regarding whether he was denied the right to call witnesses in violation of his due process rights. Therefore, the court **GRANTS** summary judgment for respondent on this issue.

Regarding the video, the Lennear court held that under Wolff, "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." 937 F.3d at 262. In Lennear, following a dispute with a prison staff member, the petitioner was charged in a disciplinary hearing with a violation for "conduct disruptive to the security of the institution (high) most like engaging or encouraging a group demonstration." Id. at 264. Lennear and the staff member described events differently and at the conclusion of the disciplinary hearing process Lennear was found to have committed the violation and was punished with the loss of 27 days of good-time credits, 30 days of segregation and impoundment of personal property, and loss of 120 days of commissary and visiting privileges. Id. at 265–66.

Lennear appealed the results of the disciplinary hearing through BOP administrative channels, asking at each level that the "cameras" be reviewed to validate his version of events. Id. at 266. His appeal was denied at each level, with the regional director stating that Lennear did not timely request a review of video footage when presenting his defense to the charges,

9

although the director did not cite to any record evidence or testimony regarding Lennear's request. Id.

Lennear filed a habeas petition, arguing that the disciplinary review process violated his due process rights because he was denied access to and official consideration of video surveillance of the incident. He stated in a sworn affidavit that he requested consideration of the video surveillance at the investigation, disciplinary committee, and hearing stages, and that each request was denied. The respondent did not offer an affidavit or other evidence controverting Lennear's allegations. Id. at 267. The district court denied the petition without holding an evidentiary hearing and the Fourth Circuit reversed. Id.

The court first held that "documentary evidence" includes video surveillance evidence and is subject to the procedural protections outlined in Wolff. Id. at 268–69. Therefore, an inmate has a qualified right of access to the evidence and a qualified right to compel official review of the evidence. Lennear, 937 F.3d at 269. "[U]pon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" Id. (quoting Wolff, 418 U.S. at 566). "Access to documentary evidence, such as video surveillance evidence, may well prove 'central to the construction of a defense,' as it could prove exculpatory (for example, if it counters a correctional officer's version of events) or assist the inmate in identifying other relevant evidence or witnesses." Id., citing Smith v. Mass. Dep't of Corr., 936 F.2d 1390, 1401 (1st Cir. 1991)). "Video footage, like other forms of documentary evidence, is particularly valuable to inmates in disciplinary proceedings because

inmates, like Petitioner, 'obviously face[ ] a severe credibility problem when trying to disprove the charges of a prison guard.'" Id. (citing Hayes v. Walker, 555 F.2d 625, 630 (7th Cir. 1977)).

An inmate's right of access to video surveillance evidence must give way if the government establishes that providing the inmate with access to such evidence would be "'unduly hazardous to institutional safety or correctional goals.'" Id. at 270 (quoting Wolff, 418 U.S. at 566). Prison officials have the burden of coming forward with evidence of the reasons for denying an inmate's request for video surveillance footage and must consider requests on an individual basis. Id. Also, if prison officials deny an inmate access to a requested video on grounds that the video is not pertinent to the inmate's alleged violation, the determination must be made by the disinterested hearing officer and not the officials involved in lodging the charge. Id. at 271. If prison officials deny an inmate access to surveillance video, they must consider whether alternative avenues are available to provide the inmate with access to pertinent information included in the video, such as providing the inmate with a written summary of the evidence and entering the video into evidence as a confidential exhibit. Id. at 272. The court noted that several district courts have stated in a general manner that "if an inmate fails to request access to or consideration of documentary evidence before or during a disciplinary hearing, then prison officials' failure to disclose or consider such evidence does not amount to a denial of due process." Id. at 274–75 (citing Piggie v. McBride, 277 F.3d 922, 925 (7th Cir. 2002); Bliss v. Allenwood, 558 F. App'x 158, 160 n.4 (3d Cir. 2014); Donahue v. Grondolsky, 398 F. App'x 767, 771 (3d Cir. 2010)).

In Young's case, the incident report dated April 25, 2003, states that Young did not request any witnesses but does not state whether he asked to see the video. Also, while the

incident report indicates that Young was advised of his right to remain silent, it does not indicate that he was advised of his right to present documentary evidence. Incident Report, ECF No. 10-2. The notice of the disciplinary hearing dated April 28, 2023, indicates that Young was told that he had the right to call witnesses and to present documentary evidence on his behalf, but he did not wish to call witnesses. The notice contains no mention of whether Young inquired about the video. Inmate Rights at a Disciplinary Hearing, ECF No. 10-3; Notice of Disciplinary Hearing Before the DHO, ECF No. 10-4. In the report from the hearing, dated July 3, 2023, the hearing officer stated that Young did not request any witnesses, did not present documentary evidence, and did not request video evidence during any stage of the disciplinary proceeding. Discipline Hearing Officer Report, ECF No. 10-5 at 1–2.

In the pending motion, Young claims that during the disciplinary hearing, prison staff threatened him and denied his request to call witnesses or provide documentary evidence and "denied Young's request for the video evidence which proves/provide the actual facts of Young's truth of what really happened." Mot., ECF No. 1 at 1. As part of the relief requested, he asks the court to "retrieve the full video footage on 4/24/23 – 4/25/23 at USP-Lee to confirm/verify he did not attempt to assault any staff members as Young previously requested this video evidence during his DHO which Young was denied." Id. at 2. In a supplemental pleading, Young reiterated his claim that he was not allowed to call witnesses or to present "documentary evidence/video footage" of the incident. He added that "DHO knew that the video evidence would clearly prove that Young was innocent and that Young's statement was in fact true that he never attempted to assault any USP-Lee staff at all and that Sloan's incident report against Young were falsified and fabricated as a cover up to hide the truth of what really

12

had taken place." Supp. Pet., ECF No. 3 at 1. Young once again asked that the video footage of the incident be reviewed and put on the record as evidence. Id. at 2. In his reply to the motion for summary judgment, Young repeated his claim that he was not allowed to call witnesses and present documentary evidence, "including video footage pertinent to his defense" and that without the evidence, he could not "mount a meaningful defense" to the allegations of the disciplinary hearing. Resp., ECF No. 18 at 1.

It is clear under Lennear and Wolff that fact issues preclude summary judgment on Young's claim that his constitutional right to due process was violated when BOP staff would not allow him to review the video or have the DHO review it and make it part of the record in this case. Although the respondent asserts that Young did not ask to see the video or have it considered, Young asserts that he did so, and the court must view the facts and draw all reasonable inferences in the light most favorable to Young. Glynn, 710 F.3d at 213.[2] Thus, on the record before it, the court **DENIES without prejudice** the motion for summary judgment on Young's claim that his due process rights were violated when he was not allowed to review the surveillance video or have the DHO review it and make it part of the record in this case.

---

[2] Although Young's response to the motion for summary judgment was not sworn, the Roseboro notice mailed to him did not inform him that he should swear under penalty of perjury to any factual statement submitted in response. ECF No. 12; Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). Courts are directed to liberally construe pro se pleadings, Haines v. Kerner, 404 U.S. 519, 520 (1972), and it would not further the interests of justice to grant summary judgment to the respondent because Young's response was not made under penalty of perjury when the lack of a sworn statement easily could be remedied.

Young's claim that the BOP should have arranged a psychiatric evaluation for him, Supp. Pet., ECF No. 3 at 2, does not rise to the level of a constitutional violation. The BOP Program Statement to which Young refers is P6340.04, which provides the following:

> **Psychiatric Evaluation for Correctional Purposes.** Inmates receiving an incident report and who are psychiatric inpatients, or whose mental status is questionable, will be referred to a psychiatrist or psychologist for an assessment regarding competency and responsibility. The mental health clinician will use the same standards that apply in establishing competency and responsibility pursuant to 28 CFR 541.10(b)(6) (contained in the Program Statement on Inmate Discipline and Special Housing Units).

Assuming that Young's mental status is questionable and that the BOP violated its policy when it did not refer him to a mental heath professional for an assessment, the BOP's failure to abide by its own internal rules does not give rise to a claim for habeas relief. Jones v. Andrews, No. 1:20cv251 (CMH/TCB), 2020 WL 4809440, at *3 (E.D. Va. Aug. 18, 2020) (citing Mendoza v. Tamez, 451 F. App'x 715, 717-18 (4th Cir. 2011) and Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011)). See also Beard v. Hollembaek, No. 5:16-HC-2197-FL, 2018 WL 1570798, at *4 (E.D.N.C. Mar. 30, 2018) ("[V]iolations of BOP policy that do not implicate the baseline procedural safeguards mandated by Wolff are not cognizable habeas claims.") Moreover, in this case, Young is claiming that he did not become disruptive or strike the officer, making his mental status at the time of the incident irrelevant to the determination of his claim. Accordingly, summary judgment is **GRANTED** for the respondent on Young's due process claim based on the BOP's failure to provide him with a mental health assessment.

## CONCLUSION

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** respondent's motion to dismiss, or, alternatively, motion for summary judgment, ECF No. 9. If respondent wishes to file an amended motion for summary judgment, it must do so **within 30 days** of the date this opinion and order are docketed. Any amended motion for summary judgment should address whether the video that Young claims to have requested existed at the time of the DHO hearing and should include the records of Young's administrative appeals. If the video was destroyed, the respondent should inform the court as to when the destruction occurred. See Lennear, 937 F.3d at 279 (remanding case for district court to determine whether the requested video existed at the time of the alleged request and whether request to view it was timely). If the video exists, respondent is **ORDERED** to provide a copy to the court for in camera review. In addition, because the DHO relied in part on Officer Sloan's injuries to find Young guilty of the offense, the respondent is **ORDERED** to include copies of the medical assessments, photographs, and staff injury assessments referred to in the Disciplinary Hearing Officer Report, ECF No. 10-5 at 2. Any response by Young will be due **within 30 days** of the filing of the respondent's amended motion and factual claims should be made under penalty of perjury in accordance with 28 U.S.C. § 1746.

The Clerk is directed to **TERMINATE** Young's motion for expungement of his disciplinary record, ECF No. 21, as it is identical to his response to respondent's motion to dismiss or alternatively, for summary judgment, and need not be addressed separately.

An appropriate Order will be entered.

Entered: March 31, 2025

*/s/ Michael F. Urbanski*

Michael F. Urbanski
Senior United States District Judge