IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

DEC 22 2025

LAURA A. AUSTIN, CLERK
BY: M. Poff
DEPUTY CLERK

| | |
|---|---|
| KAREEM YOUNG, ) | |
|     Petitioner ) | Case No. 7:24-cv-189 |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | By: Michael F. Urbanski |
|     Respondent ) | Senior United States District Judge |

### MEMORANDUM OPINION

Pending before the court is the government's supplemental motion for summary judgment and supporting brief, ECF Nos. 26, 27, to which petitioner Kareem Young has responded, ECF No. 33, and the government has replied. ECF No. 35. As discussed below, having reviewed the briefing and the evidence, the court **GRANTS** the motion for summary judgment and **DISMISSES** Young's motion for relief pursuant to 28 U.S.C. § 2241.

### I. BACKGROUND

Young currently is incarcerated at United States Penitentiary (USP) Victorville in Adelanto, California. At the time he filed his motion for relief, he was incarcerated at USP Lee in Jonesville, Virginia. Young complains about procedures in a disciplinary hearing at USP Lee that resulted in the loss of good conduct time.

In Incident Report No. 3763393, Young was accused of "assaulting w/o serious injury (attempting)." The incident report, submitted by M. Sloan, sets forth the following:

> On April 24th, 2023, at approximately 1:50 p.m. inmate Young, Kareem ... reported to the Lieutenant's Office to speak to Psychology staff. While Inmate Young was speaking with other Psychology staff, he became verbally aggressive, at that point it was deemed necessary to conduct a body scan and visual search

> of inmate Young, due to staff safety. At that time, I applied hand restraints to inmate Young. Due to shift change I assisted in escorting Inmate Young to R&D to be body scanned and visually searched for any other weapons and or contraband. At approximately 2:04 p.m., during the visual search attempt Inmate Young displayed signs of imminent violence, by attempting to strike my facial area with his elbow. With the least amount of force necessary I placed inmate Young onto the ground to gain control of the disruptive Inmate. Staff needs assistance in R&D was called via portable radio. I and responding staff gained control of Inmate Young by placing him back into hand restraints. Immediately after control of the inmate was gained, I separated myself from the incident. I have reported injuries that have been documented by medical. End of report.

Incident Report, ECF No. 10-2 at 1.

The incident report was reviewed by the Unit Disciplinary Committee (UDC) and Young was given an opportunity to comment but declined to do so. The incident was then referred to the disciplinary hearing officer (DHO) for a hearing. Id. at 2-3; Notice of Disp. Hrg., ECF No. 10-4 at 1. A hearing was held on May 3, 2023, and according to a report prepared by the DHO, Young acknowledged receipt of a copy of the incident report and that he understood his rights before the DHO. Young did not request staff representation and did not call any witnesses. Disp. Hr'g. Officer Rep't, ECF No. 10-5 at 1. The DHO read the description of the incident report to Young and asked Young if he admitted or denied attempting to strike the reporting officer in the facial area with his elbow. Young responded, "I didn't do that." According to the DHO, Young did not present any documentary evidence for the DHO to consider and did not request video evidence during any stage of the disciplinary process. Id.

The DHO found, based on the greater weight of the evidence, that Young committed the prohibited act of Assaulting Any Person (Attempted) in violation of Code 224A of the

2

inmate disciplinary policy. Id. at 3. The DHO relied upon Officer Sloan's report, a supporting memorandum filed by another officer who was assisting Sloan and corroborated Sloan's description of events, and a Health Services Staff Injury Assessment and photographs which stated the reporting staff member sustained injuries as a result of the incident. Id. at 2–3. Young was punished with the loss of 27 days of good conduct time, 30 days of disciplinary segregation, and the loss of 180 days each of commissary privileges and phone privileges. Id. at 4. The DHO issued the report on July 3, 2023, id. at 4, and Young was given a copy of the report on August 17, 2023. Decl. of Jeffery Brown, ECF No. 10-1 ¶ 8. Respondent concedes that Young appealed the disciplinary action and exhausted his administrative remedies. Resp., ECF No. 10 at 5.

In his complaint, Young asserted that his due process rights were violated when he was denied the right to call witnesses and present documentary evidence at the hearing, and that the DHO threatened him during the hearing and denied his request for the video evidence of the incident. Mot., ECF No. 1 at 1. Young asked the court to obtain the video of the incident and watch it to confirm that Young did not attempt to assault a staff member. He also asked that the court direct that the record of the disciplinary hearing be expunged. In addition, Young asserted that he was called to the lieutenant's office to talk to the psychology staff and that while he was there, psychology officers became verbally aggressive with him by making racist remarks and sexually harassing him. He further alleged that he later was strip searched, tortured, sexually assaulted, put in restraints, and deprived of medical attention, food, and water. Id. Young also alleged that the BOP violated Program Statement 6340.04(d) because he is a mental health patient and BOP staff should have referred him for a psychiatric

3

evaluation for correctional purposes. ECF No. 3 at 2. Finally, Young asked to be transferred to another unit for his safety because he feared retaliation and harassment by staff at USP Lee. Id. at 2.

The government filed a motion to dismiss, or in the alternative, for summary judgment. ECF Nos. 9, 10. Young responded, and the government replied. ECF Nos. 18, 19. In a memorandum opinion and order filed on March 31, 2025, the court dismissed Young's claims that he was not allowed to call witnesses and that his constitutional rights were violated when prison staff did not refer him for a psychiatric evaluation for correctional purposes. Mem. Op. and Order, ECF Nos. 22 at 8–9, 14; 23. The court noted that to the extent Young was complaining about his conditions of confinement, including excessive use of force, he must do so via a separate civil action asserting a cause of action under 42 U.S.C. § 1983, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), or the Federal Tort Claims Act, as appropriate. Mem. Op., ECF No. 22 at 4 n.1. The court denied as moot Young's request to be moved to another prison facility as he had been transferred out of USP Lee to another facility. Id.

The court denied without prejudice the government's motion for summary judgment on Young's claim that he was not given a copy of the digital video recording of the incident. Id. at 9–13. The court gave the government an opportunity to file an amended motion for summary judgment and further ordered that any amended motion for summary judgment should address whether the video that Young claims to have requested existed at the time of the DHO hearing and if the video had been destroyed, the government was directed to inform the court as to when the destruction occurred. If the video existed, the government was

4

ordered to provide a copy to the court for in camera review. Id. at 15. In addition, the government was ordered to provide copies of Young's administrative appeals, copies of his medical assessment, and copies of the photographs and staff injury assessment referred to in the Disciplinary Hearing Officer Report. Id.

The government filed a supplemental motion for summary judgment on May 9, 2025. Attached to the motion were two computer disks containing copies of video images obtained from three cameras for the court's review. Also attached were the records of Young's administrative appeals, medical records of the officer who alleged injury, Young's medical records following the incident, a copy of a memorandum of the incident, and a declaration by Jamie Canfield, a Special Investigative Agent from USP Lee who wrote the memorandum. Resp.'s Br., ECF No. 27. Young responded to the supplemental motion, ECF No. 33, and the government replied. ECF No. 34.

## II. STANDARD OF REVIEW

Under Rule 56, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013).[1] When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact

---

[1] In its first dispositive motion, the government moved to dismiss Young's petition for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and, alternatively, for summary judgment under Fed. R. Civ. P. 56. Because the government filed documentary evidence, the court construed the motion as one for summary judgment in accordance with Fed. R. Civ. P. 12(d) and gave Young an opportunity to respond.

is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" McAirlaids, Inc. v. Kimberly–Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)).

The non-moving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). The non-moving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249), and "'cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another.'" Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008)

(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)). "[T]o grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (quoting Anderson, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. World-Wide Rights Ltd. P'ship v. Combe Inc., 955 F.2d 242, 244 (4th Cir. 1992).

## III. DISCUSSION

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws, or treaties of the United States. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process and acknowledged that under certain circumstances a state may create liberty interests which are protected by the Due Process Clause. Id. at 483–84 (citing Wolff v. McDonnell, 418 U.S. 539 (1974) and Meachum v. Fano, 427 U.S. 215 (1976)). However, the interests generally are limited to those which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Young lost 27 days of good conduct time and it is well-established that inmates have a liberty interest in the forfeiture of vested good conduct time. Batra v. Smith, No. 3:13CV787, 2016 WL 4249494, *2 (E.D. Va. 2016) (citing Henson v. United States Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000)); Downs v. Gill, No. DKC-10-964, 2011 WL 1457757, *3 (D. Md. 2011) (citing Henson, 213 F.3d at 898). Thus, good conduct time can only be taken from a prisoner in a manner that comports with due process.

7

The Supreme Court described the process due a prisoner accused of a disciplinary infraction in Wolff, 418 U.S. at 564: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

Young's remaining claim hinges on his ability to present documentary evidence at the disciplinary hearing, which in this case relies in turn on his ability to review video of the incident, or to ask the hearing officer to review the video. In Lennear v. Wilson, 937 F.3d 257, 262 (4th Cir. 209), the Fourth Circuit held that under Wolff, "inmates at risk of being deprived of a liberty interest, like good time credits, have a qualified right to obtain and present video surveillance evidence." The court explained that an inmate's right to present "documentary evidence" includes video surveillance evidence and is subject to the procedural protections outlined in Wolff. Id. at 268–69. Therefore, an inmate has a qualified right of access to the evidence and a qualified right to compel official review of the evidence. Id. at 269–70. "[U]pon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correctional goals.'" Id. at 269 (quoting Wolff, 418 U.S. at 566). "Access to documentary evidence, such as video surveillance evidence, may well prove 'central to the construction of a defense,' as it could prove exculpatory (for example, if it counters a correctional officer's version of events) or assist the inmate in identifying other relevant

8

evidence or witnesses." Id., citing Smith v. Mass. Dep't of Corr., 936 F.2d 1390, 1401 (1st Cir. 1991)). "Video footage, like other forms of documentary evidence, is particularly valuable to inmates in disciplinary proceedings because inmates, like Petitioner, 'obviously face[ ] a severe credibility problem when trying to disprove the charges of a prison guard.'" Id. (citing Hayes v. Walker, 555 F.2d 625, 630 (7th Cir. 1977)).

As set forth in the previous memorandum opinion, the records from the disciplinary hearing did not conclusively establish that Young had not requested video related to the incident. See discussion, Mem. Op., ECF No. 22 at 11–13. In response to the government's pending supplemental motion for summary judgment, Young submitted an unsworn response that was identical to the response he submitted to the first motion for summary judgment. He also submitted a statement, ostensibly made under penalty of perjury, in which he repeated his claim that he was "brutally beaten, sexually assaulted, tortured, and treated with cruel and unusual punishment by multiple staff members at USP Lee." In addition, he asserted that the disciplinary report was false and created in bad faith with the intention of justifying the mistreatment he had endured. Resp., ECF No. 33-1. However, Young did not claim in the statement that he asked to see the video recording of the incident that occurred on April 24, 2023, or that he asked staff to view the video recording. Id.

"It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993). See also Razo v. Streeval, No. 7:21-cv-516, 2025 WL 961628, at *5 (W.D. Va. Mar. 31, 2025) (Cullen, J.) (granting summary judgment where disciplinary hearing officer offered a sworn declaration that inmate had not asked to see video of incident and inmate's response was

9

unsworn). Because Young has now been given ample opportunity to provide the court with a sworn statement that he requested documentary evidence in the form of the video recording of the incident and has not done so, the court will enter summary judgment in favor of respondent.[2] See Lennear, 937 F.3d at 279 ("[I] if the district court determines that Petitioner did not timely request such evidence ... then no violation of Petitioner's procedural due process rights occurred.")

In addition, the court reviewed the video recordings provided by the government and they offer no support for Young's allegations that he did not strike Officer Sloan, or that Young was beaten or sexually assaulted by prison staff. Young makes three brief appearances on the videos. In the first, at approximately 1:48:04 p.m., on April 24, 2023, he is being escorted by officers down a hallway to the area of the prison where staff conducts body scans and visual searches, also called the Receiving and Discharge ("R&D") area.[3] Young and the officers appear calm and in no distress. Several minutes later, at 1:51:50 p.m., staff is seen running toward the area where Young had been taken, which is consistent with Officer Sloan's statement that he called for assistance when Young attempted to strike him with his elbow.

In Young's second video appearance, which was recorded in the R&D area, he is first seen being escorted into the area at 1:49:16 p.m. on the same day. Young and the officers still appear calm. At approximately 1:51:45 p.m., officers are seen running into the R&D area, which, again, is consistent with Officer Sloan's statement that he called for help after Young

---

[2] In the court's previous memorandum opinion, it declined to dismiss Young's motion for habeas relief solely because his response to the motion for summary judgment was unsworn, because the Roseboro notice did not inform him that he should swear under penalty of perjury to any factual statement submitted in response, and because the lack of a sworn statement could easily be remedied. Mem. Op., ECF No. 22 at 13 n.2 (citing Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) and Haines v. Kerner, 404 U.S. 519, 520 (1972)).
[3] Decl. of Jamie Canfield, ECF No. 27-9 § 7.

attempted to elbow him in the face. The officers are seen leaving the area at 1:53:10 p.m. At approximately 2:05:25 p.m., Young is in restraints and is being walked backward with his head down out of the R&D area. His clothing has been changed to what Canfield described as "blue alternative clothing."[4]

The third time Young appears on video, he is being examined by a nurse in the medical department. The nurse describes a small laceration on Young's nose, but no other injuries. The officer narrating this video states that the time was 2:52 p.m.[5]

The videos do not support Young's allegation that he was physically or sexually abused by staff when he was taken for the visual search and body scan, or that he did not attempt to strike Sloan.[6] To the contrary, the videos provide circumstantial support for Sloan's allegation that he called for staff assistance after Young tried to strike him with his elbow. Accordingly, even if Young had made a showing that he asked to see the videos or that the DHO view the videos, nothing on the videos would have changed the outcome of the disciplinary hearing. Accordingly, the fact that the videos would not have helped Young in the disciplinary proceeding supports the conclusion that any failure to provide Young access to the videos was not a violation of his constitutional right to due process. See Lennear, 937 F.3d at 277 ("[W]e hold that in evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense.") Therefore, summary judgment is **GRANTED** in favor of respondent.

---

[4] Canfield Mem., ECF No. 27-10.
[5] The other two videos do not have audio.
[6] As to Young's claim that he was deliberately taken to a place where his contact with the officers would not be on camera, Canfield explained in a sworn declaration that there are no cameras in the visual search area to maintain the inmates' privacy when prison staff search their bodies. Canfield Decl., ECF No. 27-9 ¶ 12. Young did not refute this statement.

11

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** respondent's supplemental motion for summary judgment, ECF No. 26, and **DISMISSSES** Young's 28 U.S.C. § 2241 petition for habeas corpus relief.

An appropriate Order will be entered.

Entered: 12/22/2025

Michael F. Urbanski
Senior United States District Judge